UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVE WEINBERG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:06-CV-2332-B |
| | § | ECF |
| NATIONAL FOOTBALL LEAGUE | § | |
| PLAYERS ASSOCIATION, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

This is an action in which former National Football League ("NFL") Certified Contract Advisor and agent Steve Weinberg sued the National Football League Players Association ("NFLPA"), several other agents, former NFL players, certain executives and lawyers with the NFLPA, and NFLPA arbitrator Roger Kaplan essentially alleging that Defendants conspired with each other to punish Weinberg for speaking out against certain NFLPA practices and committed various acts against him culminating in the revocation of his agent certification and usurpation of his clients. Having considered Defendant Roger Kaplan's ("Kaplan") Motion to Dismiss for Lack of Personal Jurisdiction (doc #7) upon remand of this matter from the Fifth Circuit, the Court finds the Motion meritorious and it is therefore GRANTED as follows.

## BACKGROUND

Weinberg became an NFLPA Contract Advisor in 1982 and built a broad clientele of players over the next twenty years. (Compl. ¶ 16). During that time, Weinberg criticized the NFLPA openly, including at agent meetings, for many situations that he felt hurt his clients, including the

- 1 -

1987 Players' Strike, the 1993 institution of a salary cap, and the failure of the NFLPA to secure fully guaranteed contracts for its players. (Compl. ¶ 17). Beginning in 2001, Weinberg and his clients began reporting violations of the NFLPA regulations by other Contract Advisors and agents to the NFLPA. (Compl. ¶¶ 30-31). After the NFLPA failed to act on Weinberg's reports, Weinberg stood up at an agent meeting in 2002 and publicly accused the NFLPA of inconsistently treating certain agents and failing to act in the best interests of the NFL players. (Compl. ¶ 32).

In 1998, Weinberg formed a partnership to recruit new clients with fellow NFL agent Howard Silber. (Compl. ¶ 19). The partnership ended shortly thereafter and led to a legal dispute in which Silber alleged that Weinberg failed to pay the amounts owed to Silber under their partnership agreement. (Compl. ¶¶ 20-24). Silber and Weinberg mediated their dispute using a local attorney and not an NFLPA arbitrator. (Compl. ¶ 21). The arbitrator entered an award against Weinberg, which he appealed and which was confirmed by the federal district court. (Compl. ¶ 25). Weinberg appealed the confirmation to the Fifth Circuit. (Compl. ¶ 26).

While Weinberg's appeal was pending in the Fifth Circuit, Silber began trying to collect fees he claimed were owed and had been awarded in the arbitration by directly suing Weinberg and various NFL players. (Compl. ¶ 27). Weinberg and certain players then filed Grievances under Section 5 of the NFLPA regulations alleging that Silber's conduct violated the regulations. (Compl. ¶ 28). Silber counterclaimed alleging that his actions were justified and asked the NFLPA to revoke Weinberg's certification as a Contract Advisor. (Compl. ¶ 29).

The Section 5 Grievances filed by Weinberg and the NFL players were sent to NFLPA Arbitrator Roger Kaplan for resolution. (Compl. ¶ 42). Weinberg and certain NFL players asked Kaplan to set a hearing on their Grievances, but no hearings were ever set. (Compl. ¶ 43). In the

meantime, the NFLPA filed a Section 6 Disciplinary Action against Weinberg essentially alleging the same thing as Silber's counterclaim in the Section 5 Grievances. (Compl. ¶ 43). Weinberg asked the NFLPA to stay action on the Section 6 issues pending the outcome of the Section 5 Grievances, but the NFLPA refused. (Compl. ¶ 46). After a hearing in front of the Agent Disciplinary Committee, the NFLPA revoked Weinberg's certification for three (3) years effective immediately. (Compl. ¶¶ 51-51). Weinberg alleges that all of these acts were part of a conspiracy by Defendants to punish him for speaking out against the NFLPA. (Compl. generally).

Weinberg appealed the revocation of his Advisor certification by filing an appeal with Arbitrator Kaplan and scheduling a hearing for that appeal. (Compl. ¶ 63). Weinberg also filed an emergency appeal challenging regulations enacted by the NFLPA after the filing of the Section 6 Action against him, which were applied by the NFLPA to not stay the revocation of Weinberg's certification pending his appeal. (Compl. ¶ 65).[1] Arbitrator Kaplan denied the emergency appeal after a hearing. (Compl. ¶ 65). A few months later, Kaplan rendered an award on Weinberg's substantive appeal and changed the revocation to a shorter suspension. (Kaplan Aff. ¶ 5).

Later, Weinberg filed grievances with the NFLPA seeking to recover unpaid agent fees from his former clients. (Compl. ¶ 88). These grievances were sent to Arbitrator Kaplan for resolution. When Weinberg contacted Kaplan to set the grievances for hearings, Kaplan asked why Weinberg wanted to move forward with the grievances in light of his previous ruling. (*Id.*). Weinberg insisted recently that he did want to move forward. However, Kaplan, at the direction of other Defendants, sent him a letter threatening to dismiss thirty-two (32) of the grievances. (Compl. ¶ 89). Weinberg

---

[1]Under previous regulations, Weinberg's revocation would have been stayed pending appeal and he would have been able to continue to represent clients during that time. (Compl. ¶ 63).

alleges that Kaplan is acting and has acted in conspiracy with the other Defendants to commit fraud against Weinberg, tortiously interfere with Weinberg's existing contracts with clients, tortiously interfere with Weinberg's prospective business, and restrain trade. (Counts Two, Four, Six, and Seven of the Compl.).

Specific Allegations Against Arbitrator Kaplan

The only allegations in the Complaint referring to Arbitrator Kaplan specifically are:

- Kaplan refused to set a date for a hearing on Weinberg's Section 5 Grievance against Silber. (Compl. ¶ 43).

- Kaplan was paid by and was closely aligned with the NFLPA. (Compl. ¶ 49).

- Kaplan was caused by the other Defendants to not set a hearing on Weinberg's Section 5 Grievance. (Compl. ¶ 50).

- Kaplan "failed to follow the NFLPA regulations by refusing to acknowledge the overwhelming majority of NFL player grievances that were filed by Weinberg's clients against Silber." (Compl. ¶ 50).

- Kaplan wrongfully denied Weinberg's emergency appeal to stay his revocation pending resolution of his substantive appeal. (Compl. ¶ 65).

- When Weinberg contacted Kaplan to set the grievances for hearings, Kaplan asked why Weinberg wanted to move forward with the grievances in light of his previous ruling. (Compl. ¶ 88).

- Kaplan, at the direction of other Defendants, sent Weinberg a letter threatening to dismiss thirty-two (32) of his grievance against former clients. (Compl. ¶ 89).

Kaplan is a lawyer licensed in the District of Columbia who has served as an NFLPA arbitrator since 1994. (Kaplan Aff. ¶¶ 2, 5). Kaplan has an office in Virginia and does not maintain an office or registered agent in Texas. (Kaplan Aff. ¶¶ 3, 7-8). Kaplan communicated with Weinberg and billed him in Texas during the Section 5 and 6 grievances that are the subject of the Complaint, but did not come to Texas with regard to any proceeding referenced in the Complaint.

(Kaplan Aff. ¶ 9; Weinberg Decl. ¶¶ 4-5 and Exs. 2-3). Kaplan also communicated with Weinberg in Texas asking Weinberg to call him to set a hearing for certain grievances Weinberg filed against former clients seeking unpaid agent fees. (Weinberg Decl. ¶ 6 and Ex. 4).[2] Although Kaplan served as an arbitrator for Weinberg in 1995 and conducted a hearing in Dallas at that time for a matter unrelated to this case, Kaplan has not been to Texas more than three times in the last five years. (Weinberg Decl. ¶ 3 and Ex. 1; Aff. Kaplan Aff. ¶ 9).

Defendant Kaplan moves to dismiss the Complaint arguing that the Court has no personal jurisdiction over him. Weinberg responds that jurisdiction is proper based primarily on the acts of Kaplan's alleged co-conspirators directed at Plaintiff Weinberg in Texas.

## ANALYSIS

**I.     Jurisdictional Standards**

A plaintiff bears the burden of establishing a trial court's jurisdiction over each defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). If an evidentiary hearing is not held, a plaintiff need only establish a prima facie case of jurisdiction; poof by a preponderance of the evidence is not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). In deciding whether the plaintiff has made a prima facie case, non-conclusory factual allegations in the Complaint must be taken as true. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir.1999). The Court may

---

[2]The Court notes that Kaplan submitted a second affidavit with his Reply Brief. The Court does not accept evidence with a reply absent leave for such a submission (Local Rule 7.2(e)) and therefore did not consider that affidavit. Even if the Court had considered that evidence, to the extent that it explained or contradicted any allegations by Weinberg, the Court must resolve all conflicts in favor of Weinberg on a 12(b)(2)Motion.

also consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Spademan*, 772 F.2d at 1192. All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). However, the Court is not required to credit conclusory factual or jurisdictional allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (finding no personal jurisdiction where plaintiffs' sole evidence of contacts was their allegation "on information and belief" that defendant knew they were Texas residents and that its actions would intentionally cause harm in Texas).

"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a forum state court." *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994). A Texas state court may exercise jurisdiction over a non-resident if two preconditions are met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the Constitution. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it should reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Jones*, 954 F.2d at 1068.

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 205 (5th Cir. 1996). Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* (citation omitted). To demonstrate specific jurisdiction, the plaintiff must establish that the defendant in question undertook some activity in, or purposefully directed some act at, Texas *and* that the plaintiff's claims arise out of or result from those activities. *Felch v. Transportes Lar-Mex SA de CV,* 92 F.3d 320, 325 (5th Cir.1996)(emphasis added).

"General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). A plaintiff's own activity, without more, cannot be the basis for the exercise of jurisdiction over a non-resident. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). "Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). The analysis ultimately reduces to whether the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

## II.     Specific Jurisdiction

Specific jurisdiction over a non-resident exists when a plaintiff's cause of action arises out of the defendant's contacts with the forum. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th

Cir. 1986). The defendant must have purposefully directed his activities at a resident of the forum state and the litigation brought by the resident must arise from and relate to the defendant's activities in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Weinberg argues that Defendant Kaplan is subject to specific jurisdiction, because he is part of a conspiracy that committed the intentional tort of fraud directed at Plaintiff Weinberg in Texas. Weinberg relies on the acts of Kaplan's alleged co-conspirators as well as Kaplan's communications to Weinberg in Texas. Defendant responds that Kaplan has not availed himself of the privilege of doing business in Texas and that neither the law nor the Complaint justify attributing any acts of alleged co-conspirators to Kaplan for jurisdictional purposes. The Court agrees with Defendant Kaplan.

     A.     Purposeful Direction of Activities

Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction. *Id.* at 476. It is well-settled that "[a] plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983); *see also Patterson v. Dietze*, 764 F.2d 1145, 1147 (5th Cir. 1985) (noting that purposeful availment cannot be inferred from "the mere fortuity that the plaintiff happens to be a resident of the forum").

The only alleged contacts by Kaplan with Texas related to Plaintiff's current Complaint are Kaplan's communications to Texas resident Weinberg in Texas concerning certain Grievance proceedings in which the NFLPA designated Kaplan to serve as arbitrator. The evidence shows that Kaplan was selected by the NFLPA to serve as an arbitrator in several different Grievances initiated by Weinberg. There is no evidence or allegations that Kaplan had any choice in the matter or otherwise took any affirmation actions to contract with Weinberg. Relatedly, the evidence and

allegations also show that Kaplan's communications with Weinberg consisted largely of a limited number of form letters sent at the initiation of the Weinberg-Silber Section 5 Grievance and at the initiation of Weinberg's various Section 5 Grievances against former clients. The evidence also shows that Weinberg called Kaplan asking for information on other Section 5 Grievances against Silber and Kaplan sent an email in response.

None of these sparse communications can be characterized as anything more than the result of the fortuity that Weinberg happened to reside in Texas and that Kaplan therefore had to communicate with him there. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (finding no specific jurisdiction even though, *inter alia*, defendant had initiated and contemplated a long-term business relationship with a Texas resident and had engaged in communications with that resident in carrying out a contract between the two); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding no specific jurisdiction despite "extensive telephonic and written communication" with a Texas resident); *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985) (finding that mailing payments to Texas, isolated shipment of goods to Texas, and communications to Texas regarding performance of a contract were insufficient contacts for specific jurisdiction); *Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984) (finding that letter sent to Texas by defendant could not support personal jurisdiction as it was written in response to a process initiated unilaterally by the plaintiff). Kaplan's communications to Texas are insufficient to confer specific jurisdiction over him.

However, Plaintiff Weinberg also seeks to establish specific jurisdiction over Kaplan through

his allegations concerning conspiracy.³ Even with allegations of a conspiracy, the Court must still evaluate each of the Defendants' contacts separately to determine whether personal jurisdiction exists. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to recognize assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state."); *see also Delta Brands Inc. v. Danieli Corp.*, 99 Fed. Appx. 1, at * 5 (5th Cir. 2004) (noting that the plaintiff had to show that defendant, "individually, and not as part of the conspiracy, had minimum contacts with Texas") and *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir.1999) (same). Plaintiff Weinberg must show that either (1) the alleged conspiracy or (2) Kaplan's alleged misrepresentations were related to or arose out of Kaplan's contacts with Texas. *Delta Brands*, 99 Fed. Appx. at *5.

As an initial matter, the Court notes that "bare allegations of conspiracy without factual support do not suffice to establish minimum contacts for personal jurisdiction purposes." *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 666 n. 16 (5th Cir. 2004). There are virtually no facts alleged supporting a conspiracy between Kaplan and any other Defendant. Reading the Complaint are generously as possible, there appears to be only one allegation arguably supportive of a conspiracy involving Kaplan. Weinberg alleges that the NFLPA controlled Kaplan and caused him not to set the Weinberg-Silber Section 5 Grievance for hearing. (Compl. ¶¶ 49-50). It is entirely unclear what conspiracy the alleged act of not setting a hearing would further. Weinberg also argues that some of the communications sent to him by Kaplan were

---

³There are no allegations that Kaplan himself made any misrepresentations to Weinberg either outside of Texas that he could have foreseen would have consequences in Texas or to Weinberg when Weinberg was in Texas. *Cf. Wien Air*, 195 F.3d at 212 (finding personal jurisdiction where defendant had made calls and sent letter containing fraudulent misrepresentations to Texas).

in furtherance of the conspiracy by Defendants to commit fraud against Weinberg. Pls.' Resp. Br. at ¶ 37. However, in his brief, Weinberg identifies no specific communications that would support a conspiracy and did not identify or allege any such communications in his Complaint. Moreover, on examination of the evidence submitted by Weinberg, the Court cannot independently identify any communication by Kaplan that could support a conspiracy to commit fraud.

Weinberg has not alleged any factual support for his conspiracy claims to establish minimum contacts with Texas. Weinberg has not alleged that the conspiracy arose out of Kaplan's contacts with Texas–which were limited to essentially form communications with Weinberg–nor has he alleged, with any factual support, that the act by Kaplan of not setting a hearing was related to or arose out of Kaplan's contacts with Texas. *Kadish*, 748 F.2d at 282 (finding that the conclusory allegations of conspiracy by California defendants based upon their acts in California, even with alleged effects in Texas, were insufficient to establish minimum contacts). *See also Natl'l Architecture Prods. Co. v. Atlas-Telecom Servs. USA, Inc.*, No. 3:06-CV-0751-G; 2007 WL 2051125, at * 8 (N.D. Tex. Jul. 13, 2007) (rejecting personal jurisdiction where "all that the plaintiff has alleged is that a conspiracy existed among the defendants and that the effect of that conspiracy was felt in Texas"); *WRR Indus., Inc. v. Prologis*, No. 3:04-CV-2544-L, 2006 WL 247894, at *7 n.8 (N.D. Tex. Feb. 2, 2006) (rejecting specific jurisdiction based on the defendant's alleged status as a co-conspirator). The acts of alleged co-conspirators cannot be imputed to Defendant Kaplan for jurisdictional purposes. Plaintiff has not established that Kaplan purposefully availed himself of the privilege of doing business in Texas sufficiently to confer personal jurisdiction over him.

### III. General Jurisdiction

Asserting general jurisdiction over a defendant is appropriate only if the defendant's contacts

with the forum are of a "continuous and systematic" nature. *Helicopteros*, 466 U.S. at 414-15. As such, "the minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones*, 954 F.2d at 1068. "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Tele., Inc. v. MCI Tele., Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). "The contacts must be reviewed in toto, and not in isolation from one another." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

It is unclear whether Plaintiff Weinberg alleges that the Court has general jurisdiction over Kaplan. Weinberg did not explicitly argue that Kaplan is subject to general jurisdiction. However, Weinberg has presented evidence of contact by Kaplan with Texas from 1995. (Weinberg Decl. Ex. 1). This evidence is irrelevant to the issue of specific jurisdiction, thus the Court will address the viability of general jurisdiction over Kaplan. In addition to the communications discussed above that Kaplan had with Weinberg concerning matters germane to the instant suit, there is also evidence that Kaplan came to Texas in 1995 to conduct an arbitration hearing. There is additional evidence that Kaplan communicated with Weinberg in Texas concerning other arbitrations involving his clients over a period of years. The Court does not find these contacts substantively different than the subject communications in this case, as they also seem to have resulted from the unilateral fortuity of Weinberg being located in Texas. There is no evidence that Kaplan has continuous or systematic contacts with Texas sufficient to establish general jurisdiction over him. In fact, the opposite appears true, as the evidence also shows that Kaplan maintains no office or agent in Texas and has traveled to the State less than once a year in the last five years.

In light of the Court's findings that it does not have specific or general jurisdiction over

Kaplan, the Court need not address whether exercising jurisdiction over him would comport with traditional notions of fair play and substantial justice. *See Panda Brandywine*, 253 F.3d at 870.

## CONCLUSION

For the reasons stated above, Defendant Roger Kaplan's Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is hereby GRANTED. Plaintiff's claims against Defendant Kaplan are hereby DISMISSED.

SO ORDERED.

Dated: November 5, 2008

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE